KAB

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kee Nelson Steah, Sr., | No. CV-21-01265-PHX-JAT (JZB) |
| Plaintiff, | |
| v. | **ORDER** |
| Centurion, et al., | |
| Defendants. | |

Plaintiff Kee Nelson Steah, Sr., who is currently confined in the Arizona State Prison Complex-Yuma, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 9.) Pending before the Court is Defendant Centurion's Motion for Summary Judgment (Doc. 49).[1]

**I.      Background**

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment claims against Defendants Centurion and Corizon based on Plaintiff's allegations that Corizon and then Centurion denied procedures recommended by Plaintiff's oncologist, namely a shoulder biopsy and a replacement of his collapsed right hip pursuant to a custom, policy, and practice of avoiding costs for such procedures. (Doc. 10.)

. . . .

. . . .

---

[1] This case is currently stayed as to Defendant Corizon pursuant to Corizon's filing of a Suggestion of Bankruptcy. (Docs. 57, 65.)

**II.   Defendant Centurion's Motion for Summary Judgment**

In its Motion for Summary Judgment, Centurion argues that it was not deliberately indifferent to Plaintiff's serious medical needs regarding Plaintiff's claim for surgery for his right hip because the orthopedic specialist "decided that based upon the predicted, extensive post-operative treatment Plaintiff needed, that Plaintiff's right hip surgery should wait until after Plaintiff was released from prison in two and a half years." (Doc. 53 at 11.)

**A.   Relevant Facts**

On January 3, 2018, while Defendant Corizon was providing healthcare services to prisoners within the custody of the Arizona Department of Corrections, Plaintiff was seen by a cancer specialist. (Doc. 54-2 at 2.) The specialist noted that Plaintiff was diagnosed with multiple myeloma in 2011 and was being seen due to pain in his right hip. (*Id.*) A PET scan from January 2, 2018 revealed "destructive changes of the right acetabulum with pathologic fracturing, likely related to osteonecrosis from prior radiation therapy." (*Id.*) The specialist referred Plaintiff to an orthopedic surgeon for further evaluation regarding necrosis to the right hip and noted that Plaintiff should minimize weight bearing. (*Id.* at 3-

Centurion provided healthcare services to prisoners at all Arizona State Prison Complex facilities between July 1, 2019 and September 30, 2022. (Doc. 54 ¶¶ 1-2.)

On July 30, 2020, Plaintiff saw the hematology and oncology specialist to review his PET scan; the specialist noted that Plaintiff's recent labs showed progression of Plaintiff's multiple myeloma. (Doc. 54-5 at 3.) The specialist recommended starting treatment and consultation with a stem cell transplant specialist. (*Id.*) The specialist also noted destructive changes of the right acetabulum with pathologic fracturing and again referred Plaintiff to an orthopedic specialist for further evaluation. (*Id.*)

On September 10, 2020, Plaintiff was seen by an orthopedic specialist for the first time; the specialist ordered a CT of the Pelvis W/O Contrast and noted "with 3d reconstruction, extrapolate right hip." (*Id.* at 50.)[2] Plaintiff was diagnosed with osteoarthritis of the left hip secondary to avascular necrosis." (*Id.* at 51.)

---

[2] Defendant does not include the complete records of this visit.

On September 7, 2021, Plaintiff was again seen by the orthopedic specialist. (*Id.* at 7.) It was noted that Plaintiff would benefit from a right total hip arthroplasty, but that approval for surgery from his oncologist and cardiologist would be necessary. (*Id.* at 7.)

On September 22, 2021, Dr. Jauregui-Covarrubias reviewed the notes from the orthopedic surgeon and noted that the orthopedic surgeon's notes reflect that Plaintiff has severe right hip osteoarthritis and deformities due to multiple myeloma lesions and prior radiation and recommended a total hip replacement; Dr. Jauregui-Covarrubias agreed with the recommendation and requested that the oncologist's notes be forwarded to the orthopedic surgeon and that Plaintiff get a cardio evaluation due to chronic co-morbidities. (*Id.* at 70.)

On October 8, 2021, the hematology/oncology specialist wrote a letter stating that Plaintiff was seen on September 3, 2021 and was cleared for surgery from a hematology/oncology "point of view." (*Id.* at 57.)

On April 6, 2022, Plaintiff was cleared to have surgery "from a cardiac standpoint." (Doc. 54-3 at 94.) On April 14, 2022, NP Zaid noted that cardiology cleared Plaintiff for the surgery and noted that Plaintiff was scheduled with the orthopedic specialist for July 11, 2022 for a new consult since the previous consult was over 6 months old. (*Id.* at 99.)

On July 11, 2022, Plaintiff was seen by the orthopedic specialist, who noted "Patient will benefit from undergoing right total hip arthroplasty however [sic] due to the complexity of his problem he would require postop care which will require rehabilitation in addition physician care wish him again [sic] to be able to perform while he is incarcerated. Patient is to come back to see me if [he] would like me to proceed with the surgery after he is out in 2-1/2 years." (Doc. 54-7 at 3.)

On August 30, 2022, Plaintiff saw Dr. Jauregui-Covarrubias for follow up care regarding oncology recommendations. Dr. Jauregui-Covarrubias noted that Plaintiff has multiple myeloma, and his oncologist said that Plaintiff is not a candidate for a bone marrow transplant. (Doc. 54-3 at 83.) Plaintiff requested hip surgery and told Dr. Jauregui-Covarrubias that the orthopedic surgeon misunderstood him when he told him he would be

out in "2 ½" because Plaintiff "meant years and not months" and Plaintiff wants his hip surgery before his release from prison. (*Id.*) Dr. Jauregui-Covarrubias noted:

> -Indeed he needs a hip replacement, there is no doubt about it, but if his ortho MD does not want to do it due to lack of proper post op care in this system, he may need to be transferred to another correctional where he can get proper post-op care. I do not know if such facility is out there, and if it is, I do not know if he can be transferred, it is out of my control.
> -I also ask him to keep the legal threat out of the visit. I'll do what is medically indicated based on standards of care.
> -I clarified it is not that the correctional system does not want him to get surgery, it i[s] ortho MD who is recommending not to do it while he is in prison, due to the complexity of the surgery and the risk of post op complications.
> -I will contact administration, Dr. Jordan to see what can be done, or if there is any other option. I do not know if he can be transfer or if other units have the ability to provide post-op care.
> (NOTE: he is cleared by onco to get hip surgery)
> RTC PRN NOTE: the case was discussed with Dr. Jordan and Dr. Young who recommended to refer him back to ortho MD to re-co[ns]ider surgery.

(*Id.* at 87-88.)

The same day, Dr. Jauregui-Covarrubias submitted a consultation request for Plaintiff to be seen by the orthopedic specialist; she wrote: "63 y/o male with MM, with severe right hip OA, in need of hip replacement, cleared by his hematologist. He is at high risk of complication per last ortho note, but he would like to proceed with replacement. Please re-evaluate and provide recommendations." (*Id.* at 81.)

**B.     Supplement of the Record**

It is undisputed that Plaintiff has a serious medical need and suffers pain and limited mobility in his hip since at least 2018.

Centurion argues that it cannot be liable for deliberate indifference to serious medical needs because the specialist determined that Plaintiff could not safely have surgery while in prison. The specialist opined that he did not believe Plaintiff would be provided appropriate post-surgical care, which would increase the risk of complications following

surgery. Centurion presents no evidence as to why Plaintiff could not safely have surgery while in prison. There are no specific facts in evidence as to why Centurion's medical facility was not equipped to handle Plaintiff's serious medical needs. The specialist's note is vague as to why he believed Plaintiff could not have surgery while in prison. Plaintiff's own doctor suggested that Plaintiff could be given the surgery if he were transferred to a facility where "he can get proper post-op care." Centurion has presented no evidence as to why Plaintiff could not be given proper post-op care by its medical personnel or what post-op care Plaintiff needed that it could not provide. Centurion does not explain that if the specialist was mistaken that it could not provide post-op care that it provided information to the specialist showing that Plaintiff could be provided post-op care and therefore could have treatment for his serious medical need. Accordingly, Centurion must supplement its Motion for Summary Judgment and provide further information as to why Plaintiff could not be given the recommended surgery due to Centurion not being able to provide Plaintiff with "proper post-op care." The supplement must not exceed 5 pages.

### C. Addition of Naphcare

On August 30, 2022, Plaintiff's doctor requested that Plaintiff see the specialist again for evaluation for hip surgery. Plaintiff asserts that he was evaluated on November 11, 2022 and the specialist recommended the hip surgery. (Doc. 56.) Centurion points out that it cannot provide Plaintiff injunctive relief in the form of hip surgery because it is no longer the medical provider for the ADC as of September 30, 2022.

As such, the Court will join NaphCare as a Defendant because it is the only party that can provide Plaintiff injunctive relief for which he may be entitled.

Under Federal Rule of Civil Procedure 20, "[p]ersons . . . may be joined in one action as defendants if:

> (A) they assert any right to relief against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 20 "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 916, 917 (9th Cir. 1977). Rules 19 and 21 also promote the addition of parties when necessary. Rule 19 provides that a party must be joined where that party's absence renders the Court unable to afford complete relief among the existing parties. Fed. R. Civ. P. 19(a)(1)(A), (a)(2). Rule 21 provides that a court may, on its own initiative and at any time, on just terms, add a party. Fed. R. Civ. P. 21.

Because Centurion can no longer provide injunctive relief and NaphCare has assumed responsibility for providing healthcare services to ADC prisoners, the addition of NaphCare is necessary if Plaintiff is entitled to injunctive relief. Accordingly, the Court will add NaphCare as a Defendant and require NaphCare to answer the First Amended Complaint and supplement the record with medical records showing the status of Plaintiff's recommended hip surgery.

**IT IS ORDERED:**

(1) Within **15 days** of the date of this Order, Centurion must supplement its Motion for Summary Judgment and provide further information as to why Plaintiff could not be given the recommended surgery due to Centurion not being able to provide Plaintiff with "proper post-op care." The supplement must not exceed 5 pages.

(2) The Clerk of Court must update the docket to add NaphCare, Inc. as a Defendant to this action pursuant to Rules 19, 20(a)(2) and 21 of the Federal Rules of Civil Procedure.

(3) The Clerk of Court must prepare a service packet including copies of the Summons, First Amended Complaint, and this Order and forward it to the United States Marshal Service for personal service on Defendant NaphCare, Inc.

(4) The United States Marshal must **personally serve** copies of the Summons, First Amended Complaint, the Court's, and this Order upon NaphCare, Inc. pursuant to Federal Rule of Civil Procedure 4(e)(2) at the address below:

NaphCare, Inc.
c/o Statutory Agent
Registered Agents Inc.
1846 E. Innovation Park Dr., Ste. 100
Oro Valley, AZ 85755

(5)   The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(6)   Defendant NaphCare, Inc. must **answer** the First Amended Complaint, or otherwise respond in accordance with Rule 12 of the Federal Rules of Civil Procedure.

(7)   Within **15 days of service**, Defendant Naphcare must file a Notice including medical records showing the status of Plaintiff's recommended hip surgery.

Dated this 1st day of June, 2023.

James A. Teilborg
Senior United States District Judge